<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| VINCENT NOVELLI and THERESE NOVELLI,<br><br>*Plaintiffs*,<br><br>v.<br><br>WILLIAM BRESLIN and JUDITH BRESLIN,<br><br>*Defendants*. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 23-2513 (KMW-AMD)<br><br>**OPINION** |

**WILLIAMS, District Judge:**

## I.      <u>INTRODUCTION</u>

This matter is before the Court by way of Plaintiffs Vincent Novelli and Therese Novelli's ("Plaintiffs") Motion in Limine (Dkt. No. 58) and Motion for Summary Judgment (Dkt. No. 61); Defendants William Breslin and Judith Breslin ("Defendants") Motions in Limine (Dkt. Nos. 66, 67, 68, 69, and 70) and Cross-Motion for Summary Judgment (Dkt. No. 90); Plaintiffs' Motions to Strike (Dkt. Nos. 80 and 87); and Defendants' First Motion for Reconsideration (Dkt. No. 96). The Court has considered the Parties' submissions without oral argument pursuant to L.Civ.R. 78.1(b).  For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**[1]; Plaintiffs' Motion in Limine is **DENIED**; Defendants' Cross-Motion for Summary Judgment is **DENIED**; Plaintiffs' Motions to Strike are **GRANTED**; Defendants' Motions in Limine are **DENIED**; and Defendants' First Motion for Reconsideration is **DENIED**.

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

## II.    BACKGROUND

### A.  Defendants Purchase the Property

In July 2019, Defendants purchased a 4-bedroom, 2.5-bathroom Tudor-style dwelling ("Property"), located within the historic Marven Gardens section of Margate, for $575,000. (Statement of Undisputed Material Facts ("SUMF") ¶ 2.)  At the time, Defendants were experienced homebuyers, having purchased and sold no fewer than twenty-six (26) properties. (*Id.* ¶ 3.) Defendant Judith Breslin ("Mrs. Breslin") has substantial professional real estate experience, having been a licensed realtor in New Jersey from 2001 through 2016 and in Pennsylvania for the last ten (10) years. (*Id.* ¶ 4.)  Defendants did not obtain a home inspection report prior to purchasing the Property. (*Id.* ¶ 5.) Mrs. Breslin "knew there were issues" and that Defendants "intended to do a lot of renovations" when they purchased the Property. (*Id.* ¶ 6.) Shortly after purchasing the Property in 2019 and concluding by June 2020, Defendants renovated their Property. (*Id.*)

### B.  Defendants Renovate the Property

By Defendants' own characterization, the renovations to the Property were "significant." (*Id.* ¶ 7.) Defendants' renovations included realignment of the first-floor layout, new bathrooms, replacement of plumbing features, a new kitchen, replacement of electrical features, replacement of the roof, installation of an outdoor shower stall, and installation of a new HVAC system. (*Id.*) Specifically, the kitchen work included removal and replacement of the existing cabinetry. (*Id.* ¶ 8.) The renovated bathrooms were in the master bedroom—where Defendants replaced a single window with a double window—and the second-floor hallway. (*Id.* ¶ 9.) The realigned first floor included removal of a wall between the living room and kitchen. (*Id.* ¶ 10.) The new HVAC system replaced the existing radiator heating on the Property and required the installation of high

velocity ductwork throughout the home. (*Id.* ¶ 11.) Defendants "put a lot of blood, sweat and tears into this house," which Mrs. Breslin still refers to it as her "baby." (*Id.* ¶ 12.) It is undisputed that Defendants spent approximately $400,000.00 in total on these and other exterior renovations to the Property. (*Id.* ¶ 13; Defendants' Response to SUMF ("RSUMF") ¶ 13.) Defendants did not obtain any permits from the City of Margate to perform their renovations. (SUMF ¶ 14.)

### C. The Margate City Fifty-Percent Rule

Margate City imposes a regulation known as "the Fifty Percent Rule," which states that:

> if the cost of reconstruction, rehabilitation, addition, or other improvements to a building equals or exceeds 50% of the building's assessed tax value, the building must meet the same construction requirements as a new building. . . . Substantial improvement means any reconstruction, rehabilitation, addition, or other improvement of a structure, the cost of which equals or exceeds 50 percent of the market value of the structure before the "start of construction" of the improvement.

(SUMF ¶ 16 (citing https://www.margate-nj.com/building-department/pages/substantial-and-development-improvement-permits); *see also* Code of the City of Margate City § 175-2.) Pursuant to City of Margate Code § 145-8, the failure to correct all non-conformities subjects the property owner to daily penalties that include a $1250.00 fine and imprisonment of up to 90 days. It is undisputed that Defendants were aware of the Fifty-Percent Rule before they purchased the Property. (SUMF ¶ 22.) Defendants' Response to Plaintiffs' Statement of Material Facts denies that they were aware they were violating the 50 percent Rule when they conducted the unpermitted renovations and of the consequences for such violations. (RSUMF ¶¶ 23-24). However, Mrs. Breslin's undisputed testimony and Answers to Interrogatories confirm that she was aware her Property violated the Fifty-Percent Rule and was aware of the consequences, and that she did not

3

disclose it to Plaintiffs prior to the sale in the Sellers' Disclosure. (SUMF ¶¶ 22-25 (citing Ex. 3 at 118:2-19, 119:21-120:6, Dkt. No. 61-7).)

Specifically, Mrs. Breslin testified that before she purchased the Property, she was aware of the Fifty-Percent Rule and was cautioned against violating it. (*Id.* at 118:2-15.) Mrs. Breslin also testified that she purchased the Property for $575,000.00 and spent more than fifty percent of that value upgrading it. (*Id.* at 117:20-118:19.) Mrs. Breslin admits that she did not receive permits for any of the renovations she conducted on the Property. (*Id.* at 113:9-16.) Mrs. Breslin further testified that the reason she did not get permits was because she was afraid that if she disclosed exactly what she had done, she would be found to have violated the Fifty-Percent Rule. (*Id.* at 119:25-120:6.)

Moreover, Defendants' Answers to Interrogatories further confirms that Defendants were aware that their property improvements "had to be kept to minimum value or they would be required to tear down the" Property pursuant to the Fifty-Percent Rule. (SUMF ¶ 24 (citing Ex. 6, ¶ 8).) Furthermore, it is undisputed that Defendants represented in the Sellers' Disclosure that they were not aware of any violations of local laws relating to the Property, despite knowing that it violated the Fifty-Percent Rule due to their $400,000.00 in unpermitted renovations. (*Id.* ¶ 54(e) (citing Ex. I, ¶ 92).)

**D. Defendants Seek to Sell the Property**

Defendants initially purchased the Property with the intent to reside there, however, they decided to resell if after the renovations were completed. (*Id.* ¶ 26.) Defendants entered into an agreement of sale for the Property with a buyer represented by Dana Hartman ("Hartman") of Berkshire Hathaway. (*Id.* ¶¶ 28-29.) While under the agreement of sale, the buyer contracted with Rock Solid Home Inspections, LLC to perform a property inspection, which occurred on

4

November 30, 2021. (*Id.* ⁋ 30, Ex. 7 (the "Rock Solid Report").) The 44-page report listed numerous defects with the Property, including: rotted floor joists, which may "affect the structural integrity of the floors above if they have not already been affected"; a deficient heating system, possible organic growth (mold) in the crawlspace; termite damage to framing materials, which required replacement; cracking exterior stucco walls that could cause water to infiltrate; gutters completely missing from the Property, which would cause water to infiltrate into areas below grade; possible mold and evidence of water stains in the garage. (*Id.* ⁋ 31, Ex. 7.)

The buyer also had a non-invasive stucco inspection performed on the Property, which revealed additional deficiencies through a visual inspection aided by infrared cameras. (*Id.* ⁋⁋ 33-34.) The resultant Stucco Report indicated that the stucco lacked weep screed, a moisture protectant. (*Id.* ⁋ 35.) The Stucco Report also noted that there were no expansion-control joints on the Property, which would protect the stucco from damage related to settling. (*Id.* ⁋ 36.) The Stucco Report further noted an overall lack of sealing, flashing and kickouts, all of which serve to prevent moisture damage to the stucco. (*Id.* ⁋ 37.) The Stucco Report concluded by stating, "[i]nfrared camera detected possible areas of concern. A[n] invasive test should be performed to determine if there is damage to the substrate." (*Id.* ⁋ 38.)

As a result, the buyer requested permission from Mrs. Breslin to conduct a more invasive inspection of the stucco walls to determine whether the suspected water infiltration had caused damage. (*Id.* ⁋ 39.) When Mrs. Breslin refused, the buyer obtained a quote from a local contractor for the cost to replace the stucco walls if the concerns raised in the Stucco Report were confirmed. (*Id.* ⁋⁋ 40-41.) The contractor estimated such repairs would cost at least $112,500.00. (*Id.* ⁋ 42.) After the November 30 inspection, Hartman contacted Mrs. Breslin to renegotiate the agreement of sale. (*Id.* ⁋ 43.) During that call, Hartman told Mrs. Breslin that the Property was the most

terrible house she had ever been in.  (*Id.* ¶ 44.)  The buyer requested a $115,000 reduction of the purchase price, but Defendants refused to renegotiate.  (*Id.* ¶¶ 45-46.)  The buyer terminated the agreement of sale by way of an email to Mrs. Breslin, which attached the November 30 inspection report and Stucco Report and stated the reason was for the termination was "the extensive structural work needed, stucco removal and replacement, denial of invasive stucco inspection and denial for oil tank inspection the buyers have decided to cancel the contract."  (*Id.* ¶ 47.)  Mrs. Breslin admits that she received this email, though she denies that she read the reports attached thereto.  (*Id.* ¶¶ 48-49.)

After Defendants' deal with their initial buyer was terminated, Defendants relisted the Property for sale with the assistance of Berkshire Hathaway Home Services and, in connection therewith, completed the Sellers' Disclosure on May 3, 2022.  (*Id.* ¶ 50.)  Mrs. Breslin completed the Sellers' Disclosure without assistance and entered all information about the Property herself. (*Id.* ¶ 51.)  Mrs. Breslin was aware that New Jersey law imposed upon her a duty to disclose all defective conditions of the Property known to her and unknown and not readily observable to a buyer, such as the Novellis.  (*Id.* ¶ 52.)  The Sellers' Disclosure specifically states that "[t]he Seller is aware that he or she is under an obligation to disclose any known material defects in the Property even if not addressed in this printed form."  (*Id.* ¶ 53.)  Though Mrs. Breslin had received copies of the inspection reports from their initial buyer, she did not disclose any of the defects identified therein in the Sellers' Disclosure and indicated she was unaware of them.  (*Id.* ¶ 54.)

**E.  Plaintiffs' Purchase and Alleged Reliance Upon False Representations**

On May 5, 2022, Plaintiffs offered Defendants $1,400,00.00 for the Property.  (*Id.* ¶ 55.) Defendants provided Plaintiffs with the Sellers' Disclosure and presented a counteroffer raising the purchased price to $1,500,000.00.  (*Id.* ¶ 56.)  In reliance on Defendants' representations in the

Sellers' Disclosure, Plaintiffs agreed to the counteroffer and purchased the Property "as is." (*Id.* ¶ 57.) The Parties executed the Agreement of Sale, wherein Defendants warranted that the HVAC system on the property was functional as to be expected of a system of its age (brand new). (*Id.* ¶ 58.) The Parties also attached the Sellers' Disclosure the Agreement of Sale, thereby making it a part of the contract. (*Id.* ¶ 59.) After executing the Agreement of Sale, but before they became aware of the latent defects, Plaintiffs contracted for their own set of improvements to the Property, including adding necessary gutters, painting the walls, adding new flooring throughout the home, regrading of the landscaping, and adding new appliances. (*Id.* ¶ 60.) It is undisputed that Plaintiffs were entitled to rely on Defendants' representations in the Sellers' Disclosure. (*Id.* ¶ 71.)

## III.    LEGAL STANDARD

### a.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come

forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Quincy Mut. Fire Ins. Co. v. Scripto USA*, 573 F. Supp. 2d 875, 878 (D.N.J. 2008) (quoting *Liberty Lobby*, 477 U.S. at 250).

### b. **Motions *in Limine***

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Federal trial courts often find it appropriate to rule on pre-trial *in limine* motions to exclude or admit certain evidence so that "the court can shield the jury from unfairly prejudicial or irrelevant evidence." *Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (citing *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988)). "The *in limine* motion then fosters efficiency for the court and for counsel by preventing needless argument at trial." *Id.*

IV. **DISCUSSION**

    a. **Plaintiffs' Motion for Summary Judgment**

        i. **Fraudulent Inducement**

To establish a claim for fraudulent inducement, Plaintiffs must show: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citing *Metex Mfg. Corp. v. Manson,* No. 05–2948, 2008 WL 877870, at *4 (D.N.J. March 28, 2008)).  New Jersey has long recognized that sellers of real estate have a duty to disclose all latent defects that are not readily observable. *See, e.g., Weintraub v. Krobatsch*, 64 N.J. 445, 454 (1974); *Correa v. Maggiore*, 196 N.J. Super. 273, 281 (App. Div. 1984); *Wilson v. McCann*, No. A-0520-13T1, 2014 WL 5326173, at *4 (App. Div. Oct. 21, 2014).  Thus, "a contract that purports to sell real property 'as is' or in its 'present condition,' is nevertheless subject to rescission or monetary damages where the seller fails to disclose or conceals material defects in the property which are actually known or constructively known to the seller, but not readily apparent to the buyer." *Wilson*, 2014 WL 5326173, at *4 (quoting *Weintraub*, 64 N.J. at 454 and *Correa*, 196 N.J. Super. at 281); *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 554 (App. Div. 1997) (noting the failure to disclose material defects may justifiably induce another to act or refrain from acting). "Constructive knowledge embraces two concepts:  (1) knowledge that should have been known based on information that was reasonably available or obtainable, and (2) knowledge that should have alerted a reasonably prudent person to act." *Magistrini v. One Hour Martinizing Dry Cleaning*, 109 F. Supp. 2d 306, 312–13 (D.N.J. 2000) (citing *Feldman v. Lederle Lab'ys*, 97 N.J. 429, 452 (1984)).  "Silence in the face of a duty to disclose may constitute a fraudulent

concealment." *United Jersey Bank*, 306 N.J. Super. at 551 (App. Div. 1997). "The question of whether a duty exists is a matter of law," and thus ripe for summary judgment. *Id.*; *see Danowski by Danowski v. United States*, 924 F. Supp. 661, 666 (D.N.J. 1996). Defendants do not dispute that they had such a duty. (SUMF, Ex. 12 ¶ 46.)

Under New Jersey law, "deliberate concealment of a latent defective condition material to the transaction constitutes sufficient grounds to justify rescission of a contract to purchase realty." *Correa*, 196 N.J. Super. at 281. "Rescission is an equitable remedy that 'voids the contract *ab initio*, meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose.'" *Tonglu Rising Sun Shoes Co. v. Nat. Nine (USA) Co.*, No. 14-1634, 2016 WL 7374543, at *3 (D.N.J. Dec. 20, 2016) (quoting *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 136-37 (2003)). "Where a party to a contract is guilty of misrepresentation, the contract is said to be voidable—but not void—and the victim is given the choice of affirming or rescinding the contract." *Marcangelo v. Boardwalk Regency Corp.*, 847 F. Supp. 1222, 1230 (D.N.J. 1994) (citing Restatement (Second) Contracts §§ 7, 376, 384 (1981)). "If the injured party chooses to rescind, 'he must return what he received,' but may be entitled to restitution in the amount by which the defrauding party has been enriched." *Id.* at 1231.

New Jersey courts have held that where a contract borne of fraudulent concealment is affirmed rather than voided, "[t]he appropriate measure of damages in a fraud or concealment case is a perplexing problem and has been the source of much litigation and concern." *Id.* (quoting *Correa,* 196 N.J. Super. at 273). Recission of a realty contract may result in monetary damages. *Correa*, 196 N.J. Super. at 281. Liability will not attach for every undisclosed condition, such as "[m]inor conditions which ordinary sellers and purchasers would reasonably disregard as of little

10

or no materiality in the transaction." *Weintraub*, 64 N.J. at 455. Only "significant" nondisclosures can sustain a claim against the seller. *Correa*, 196 N.J. Super. at 281.

In *Tonglu*, the plaintiff sought summary judgment on the issue of liability for its claims of fraudulent inducement and breach of the resultant sale and purchase agreement. *Tonglu Rising Sun Shoes Co.*, 2016 WL 7374543, at *1-2. The court found that the defendants failed to present any actual evidence that created a genuine issue of material fact for trial with respect to the fraudulent inducement claim and granted plaintiff's request for recission. *Id.* at *6. Because the contract was rescinded, the court found the plaintiff's compliance with the terms of the contract irrelevant. *Id.* Thus, the court concluded that a trial as to damages for breach of contract was obviated by its grant of the equitable remedy of rescission. *Id.* However, because the court found that there were "still substantial questions of fact regarding the calculation of the equitable relief," it did not resolve the exact amount on summary judgment. *Id.*

Here, it is undisputed that Defendants had actual knowledge that the renovated Property violated the Fifty-Percent Rule and the consequences thereof. (SUMF ¶¶ 22-25, 54, Ex. 3 at 118:2-19, 119:21-120:6; Ex. 6, ¶ 8, Ex. I, ¶ 92.) Defendants do not dispute that Plaintiffs were entitled to rely on their Sellers' Disclosure, nor that they had a duty to disclose any material defects not readily observable to Plaintiffs. (*Id.* ¶ 71; RSUMF ¶ 71.) It is also undisputed that Plaintiffs did, in fact, rely on Defendants' representations in the Sellers' Disclosure. (*Id.* ¶ 57; RSUMF ¶ 57.) As a result of Defendants' misrepresentations, Margate City could seek to hold Plaintiffs liable for daily fines or compel compliance with modern building codes, which would effectively require demolition of the existing structure. (*See* SUMF ¶¶ 16, 18, 24 (citing Ex. 6, ¶ 8)); *see also* City of Margate Code § 145-8.) Even if the city does not enforce the existing violations, Plaintiffs are

precluded from performing their own renovations or repairs unless they bring the structure up to modern codes. (SUMF ¶ 16.)

Thus, the undisputed facts demonstrate that Plaintiffs have establish all the elements of fraudulent inducement. *See RNC Sys., Inc.*, 861 F. Supp. 2d at 451. Moreover, as there is no genuine dispute of material fact that Defendants' violation of the Fifty-Percent rule was not readily observable to Plaintiffs, and Defendants knew of this violation, the Court finds Plaintiffs have proven deliberate concealment justifying recission. *Correa*, 196 N.J. Super. at 281; *Weintraub*, 64 N.J. at 454.

Accordingly, the Court will **GRANT** Plaintiffs' Motion for Summary Judgment on the issue of liability with respect to its claims for fraudulent inducement (Count II) and recission (Count III). (*See* Am. Compl. ¶¶ 45-61.) Because Plaintiffs have elected to rescind the Agreement of Sale, the Court need not conduct a trial on the issue of monetary damages for breach of contract, as the contract is void *ab initio*. *See Tonglu Rising Sun Shoes Co.*, 2016 WL 7374543, at *3; *Marcangelo*, 847 F. Supp. at 1231. For this reason, the Court **DENIES** Plaintiffs' Motion for Summary Judgment with respect to their claim for breach of contract (Count I).

This leaves only the calculation of the equitable relief to be resolved, which is a question for the Court. *See Tonglu Rising Sun Shoes Co.*, 2016 WL 7374543, at *3. It is undisputed that Plaintiffs purchased the Property from Defendants for $1,500,000.00. (SUMF ¶¶ 56, 57; RSUMF ¶¶ 56, 57.) Though Plaintiffs claim to have expended monies improving the Property with gutters, paint, and new flooring, they do not seek additional restitution for unjust enrichment. (*See* Am. Compl. ¶ 61); *Marcangelo.*, 847 F. Supp. at 1231 (finding where injured parties choose to rescind, they must return what they received but "may be entitled to restitution in the amount by which the defrauding party has been enriched."). Nor does the Court find that restitution for the Plaintiffs'

improvements would be equitable, as Plaintiffs contend that the Property must be torn down due to the violations of the Fifty-Percent Rule.  (SUMF ⁋ 24; Pls.' MSJ Br. at 5-6.)  Thus, as a result of the rescission of the Agreement of Sale, the Court shall order Defendants to repay Plaintiffs the $1,500,000.00 purchase price but will not award any further restitution to Plaintiffs.

### b.  Defendants' Cross-Motion for Summary Judgment

Local rules play "a vital role in the district courts' efforts to manage themselves and their dockets." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 570 (3d Cir. 1985).  "Local rules facilitate the implementation of court policy, both by setting norms and putting the local bar on notice of their existence." *Smith v. Oelenschlager*, 845 F.2d 1182, 1184 (3d Cir. 1988).

The Third Circuit has cautioned that litigants ignore Local Rule 56.1(a) at their peril. *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 358 (D.N.J. 2013), *aff'd*, 907 F.3d 130 (3d Cir. 2018).  Striking a motion is appropriate for "the most egregious violations of Local Civil Rules." *Capaldi v. BJ's Wholesale Club, Inc.*, No. 18-10615, 2020 WL 2569965, at *2 (D.N.J. May 21, 2020).  Indeed, "[a] moving party's failure to comply with Rule 56.1 is itself sufficient to deny its motion." *Anise v. JPMorgan Chase Bank*, No. 16-8125, 2016 WL 9281267, at *1 (D.N.J. Nov. 29, 2016) (citing *Bowers v. NCAA*, 9 F. Supp. 2d 460, 476 (D.N.J. 1998)).  This Court has also cautioned that "[w]here a party violates Rule 7.2(b), the Court may disregard or strike the overlength brief." *Easterday v. USPack Logistics, LLC*, 2020 WL 7137859, at *3 (D.N.J. Dec. 4, 2020).

Here, the Court finds that Defendants' numerous violations of the Local Rules with respect to their Cross-Motion for Summary Judgment (Dkt. No. 90) are unfairly prejudicial to Plaintiffs. Defendants filed an overlong brief, violating L. Civ. R. 7.2(b).  They did not file a separate statement of undisputed facts, violating L. Civ. R. 56.1(a).  They filed their Cross-Motion after

Plaintiffs had already filed their reply brief in further support of their motion, violating L. Civ. R. 7.1(h). Notably, Defendants' Cross-Motion was filed on December 18, 2024, long after the November 7 deadline for filing dispositive motions (Dkt. No. 52) and December 2 deadline for filing a Cross-Motion to Plaintiffs' Motion for Summary Judgment (Dkt. No. 61) pursuant to L. Civ. R. 78.1(a). Nor did Defendants annex a proposed order specifying the relief sought through the Cross-Motion, violating L. Civ. R. 7.1(e).

Accordingly, the Court **DENIES** Defendants' untimely and procedurally improvident Cross-Motion. The Court further notes that Defendants' Cross-Motion for Summary Judgment (Dkt. No. 90) was identical to Defendants' brief in opposition to Plaintiffs' Motion for Summary Judgment (Dkt. No. 65). Thus, while the Court denies Defendants' cross-motion for its prejudicial procedural infirmities, it has nonetheless considered and rejected the arguments on the merits.

### c. Motions *in Limine*

#### i. Defendants' Motions *in Limine*

##### 1. Defendants' Motion *in Limine* to Exclude the Blue Report (Dkt. No. 66).

Defendants move to exclude the report of Plaintiffs' engineering expert, Robert Blue, on the grounds that: (1) it constitutes an inadmissible "net opinion"; (2) he impermissibly relied on inadmissible hearsay contained in inspection reports; and (3) he miscalculated the fifty-percent rule. (*See generally* Dkt. No. 66.)

"[T]he admissibility of expert testimony in federal court is not governed by the New Jersey 'net opinion' rule, but by the Federal Rules of Evidence." *Faragalla v. Otundo*, 626 F. Supp. 3d 783, 787 (D.N.J. 2022). Fed. R. Evid. 702 governs the admissibility of expert opinions and requires that:

> [T]he proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This Court must confirm that the proposed expert testimony meets the foregoing criteria and confirm that: 1) the witness is a qualified expert; 2) the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and 3) the expert's testimony is sufficiently tied to the case such that it "fits" the dispute and will assist the factfinder. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3rd Cir. 2020) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993)).

"To determine whether an expert's testimony 'fits' the proceedings, [the Third Circuit] asks whether it will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 835 (quoting Fed. R. Evid. 702(a)). This element is distinct from that of scientific merit and therefore "even if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for purposes of the case*." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3rd Cir. 1994) (emphasis original). Here, the Court finds that the Blue Report fits the proceeding, as Blue is a licensed professional engineer with decades of engineering experience. (*See* Dkt. No. 76-1.) Moreover, Blue personally inspected the Property to form his opinions as to the issues in this case. (*See id.*) Based on his personal inspection, Blue's report details the defects he observed at the Property, which will aid the factfinder in understanding the defective conditions therein. *See UGI Sunbury LLC*, 949 F.3d at 835; Fed. R. Evid. 702.

Contrary to Defendants' assertions, Rule 703 "permits experts to rely on hearsay." *In re TMI Litig.*, 193 F.3d 613, 697 (3rd Cir. 1999). "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. This Court is to conduct an independent evaluation of the reasonableness of relying on the data cited. *In re TMI Litig.*, 193 F.3d at 697. Here, Blue's report is based on his own observations during his personal inspection of the Property, supplemented by the alleged defects noted in the buyers' inspection reports. (*See* Dkt. No. 76-1.) Notably, Defendants offer no arguments as to why those reports are unreliable. Finally, Defendants' argument that Blue miscalculated the Fifty-Percent Rule lacks merit, for the reasons discussed in the following section of this opinion, *infra*.

Accordingly, Defendants' motion to exclude Blue's expert report is **DENIED**.

### 2. <u>Defendants' Motion *in Limine* to Exclude References to FEMA 50% Rule (Dkt. No. 67).</u>

Defendants move to exclude any reference to the "FEMA 50%" rule. (Dkt. No. 67.) Plaintiffs' arguments, however, are based on Margate's Fifty-Percent Rule as set forth in the Code of the City of Margate City § 175-2. (*See* Dkt. No. 75.) Moreover, Defendants fail to cite any law supporting their argument that the FEMA 50% Rule should be excluded, and therefore the Court deems Defendants' arguments waived. *See Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005); *Conroy v. Leone*, 316 Fed. App'x 140, 144 n. 5 (3rd Cir. 2009). For these reasons alone, Defendants' arguments lack merit. Defendants also argue that the Court cannot determine a violation of the Fifty-Percent Rule without an appraisal expert because the rule is based on the fair market value of the home, rather than the assessed value or market price. (Dkt. No. 67 at 10.)

Here, it undisputed that Defendants purchased the Property for $575,000.00. (*See* SUMF ¶¶ 2, 22, Ex. 3 at 117:20-118:19.) New Jersey courts have recognized that a property's fair market value may be determined without the need for an expert appraisal, as fair market value is defined as "the value that would be assigned to the acquired property by knowledgeable parties freely negotiating for its sale under normal market conditions based on all surrounding circumstances." *NR Deed, LLC v. Rabago*, No. A-2315-21, 2023 WL 3027661, at *6 (App. Div. Apr. 21, 2023); *see also Jacobitti v. Jacobitti*, 623 A.2d 794, 797 (N.J. Super. App. Div 1993) ("We will not subject the parties to the expense of appraisers' reports, expert testimony and additional legal fees, none of which could substantially alter the market value fixed by the trial court")).

Moreover, Margate's Fifty-Percent Rule concerns the "building's assessed tax value." Code of the City of Margate City § 175-2. Here, Plaintiffs have submitted a property information sheet indicating that the assessed value of the Property was $564,900 in 2018. (Dkt. No. 58-6 at 2.) The Court takes judicial notice that the information sheet submitted by Plaintiffs precisely matches the public record of the Property's assessed tax value made available by the Margate Tax Assessor through the Atlantic County Property Assessment Search Hub.[2] *See* Fed. R. Evid. 201. Conversely, Defendants offer no supporting facts to genuinely dispute the record evidence demonstrating that the Property's assessed value for purposes of the Fifty-Percent Rule. (*See generally* RSUMF.)

Finally, the Court rejects Defendants' argument that the Property was exempt from the Fifty-Percent Rule because it was situated in a historic district, as the applicable exemptions apply

---

[2]  *See* https://www.margate-nj.com/tax-assessor (last visited September 15, 2025); New Jersey Property Search, https://www.taxdatahub.com/622e0489f94ca0ce44f394e3/Atlantic-County%20Property%20Assessment%20Search%20Hub/details?id=0116_201.04_56&sale_start_date=null&sale_end_date=null&sig=vW6Niz44QnEiVSdHuD9vPb0rd7ac2r72jrIfPkXW-xl0ak6z04Qh75UvCAMzdOhw (last visited September 15, 2025).

only to designated historic structures, which the Property is not. (*See* SUMF, Ex. 2); Code of the City of Margate City § 143-53. Accordingly, Defendants' Motion to Exclude references to the FEMA 50% Rule is **DENIED**.

### 3. Defendants' Motion *in Limine* to Exclude the Buyer's Inspection Reports (Dkt. No. 68).

Next, Defendants argue that the inspection reports from the prospective buyers of the Property that were sent to Defendant should be excluded because they constitute hearsay and contained clauses stating they were prepared exclusively for the prospective buyers. (Dkt. No. 68 at 7-9.) The Court notes that, regardless of the reports' admissibility, Defendants have admitted to many of the Statements of Undisputed Facts drawn from those reports, and do not dispute that they received the reports from the prospective buyer. (*See generally id.*; RUMF.) To this end, Plaintiffs argue that the reports are not offered to prove the existence of latent defects, but to prove that Defendants were on notice that such defects were claimed to have existed. *See Huzinec v. Six Flags Great Adventure, LLC*, No. 21-1950, 2023 WL 1433633, at *3 (3d Cir. Feb. 1, 2023) (holding "[a] statement offered to prove notice is not offered to prove 'the truth of the matter asserted' and therefore is not hearsay.").

Accordingly, the Court **DENIES** Defendants' Motion *in Limine* to exclude the inspection reports for the purpose of proving Defendants' notice of the claimed defects.

### 4. Defendants' Motion *in Limine* to Exclude Evidence of Damages (Dkt. No. 69).

Next, Defendants move to exclude evidence of damages. (Dkt. No. 69.) Defendants' motion is an almost *verbatim* recitation of their motion to exclude the inspection reports. (*Compare id. with* Dkt. No. 68.) Moreover, the Third Circuit has held that the exclusion of evidence related to damages is an "extreme" sanction. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d

at 791-92.  Exclusion of critical evidence is "not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* Even in such circumstances, which are not present here, the burden "falls on the moving party to establish that exclusion is the most appropriate remedy." *Mall Chevrolet, Inc. v. General Motors LLC*, No. 18-15077, 2021 WL 426193, at *15 (D.N.J. Feb. 8, 2021).  The Court finds that here, Defendants have failed to meet their heavy burden of establishing exclusion of evidence regarding damages is appropriate.

Accordingly, the Court **DENIES** Defendants' Motion *in Limine* to exclude damages.

### 5. Defendants' Motion *in Limine* to Exclude the Ronan Report (Dkt. No. 70).

Finally, Defendants move to exclude the report of Plaintiffs' expert, Timothy Ronan.  (Dkt. No. 70.)  Defendants raise the same arguments as to Ronan's report that the Court rejected with respect to Blue's report.  (*See generally id.*)  Contrary to Defendants' assertions, the report reflects that Ronan based his opinions on his personal inspection of the Property, in addition to reports by third parties.  (*See* Dkt. No. 77-1.)  As previously noted, an expert is entitled to rely on such reports. *See* Fed. R. Evid. 703.  Here, the Court finds that Ronan's testimony fits the proceedings at issue because Ronan is a licensed professional engineer who performed an inspection of the Property to document the defects alleged in this case.  (*See* Dkt. No. 77-1.)  Specifically, Ronan's report offers expert opinion on "water infiltration, asbestos and biological growth," which could aid the factfinder in understanding the defective conditions at the Property. *Id.*; *see UGI Sunbury LLC*, 949 F.3d at 835; Fed. R. Evid. 702.

Accordingly, Defendants' motion to exclude Ronan's expert report is **DENIED**.

### ii. **Plaintiffs' Motion *in Limine***

Plaintiffs move to exclude the report of Defendants' expert, W. David Goldstein. (Dkt. No 58-1.) The Court agrees with Plaintiffs that Goldstein's report constitutes inadmissible legal opinion of contract interpretation, which is in the province of this Court. *See Cantor v. FDIC (In re Downey Fin. Corp.)*, 593 Fed. App'x 123, 126 n. 3 (3rd Cir. 2015); *see also Berckeley Inv. Grp. Ltd. V. Colkitt*, 455 F.3d 195, 217 (3rd Cir. 2006) (holding "an expert witness is prohibited from rendering a legal opinion."). The Court further agrees with Plaintiffs that Goldstein's report impermissibly opines on whether Mrs. Breslin had actual knowledge of the defects at issue. *See M.S. v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3rd Cir. 2020) (holding "an expert cannot testify to the legal conclusion of whether appropriate people had actual knowledge."); *see also Patrick v. Moorman*, 536 Fed. App'x 255, 258 (3rd Cir. 2013) ("While Rule 704 allows experts to provide an opinion about the 'ultimate issue' in a case, it prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards"). However, because the Court grants Plaintiffs' Motion for Summary Judgment on their claim for fraudulent inducement and finds rescission of the contract to be the appropriate remedy, no issues remain for which to consider Goldstein's testimony.

Accordingly, the Court **DENIES** Plaintiffs' Motion *in Limine* as moot.

### d. **Motions to Strike**

### i. **Plaintiffs' Motion To Strike Defendants' "Corrected Memorandum" In Support Of Their Motion to Exclude Damages. (Dkt. No. 80.)**

Plaintiffs move to strike Defendants' "Corrected Memorandum" in support of their Motion *in Limine* to exclude damages, which was filed *after* Plaintiffs filed their opposition thereto. (Dkt. No. 80; *see* Dkt. No. 78.) Notably, Defendants' motion was also filed without leave of Court. (*See* Dkt. No. 78.) Because Defendants filed their "corrected" brief after Plaintiffs' opposition to the

motion, the Court construes the filing as a reply brief. However, this Court will not consider arguments raised for the first time in a reply brief. *See Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June 1, 2020); *see also Anspach v. City of Philadelphia*, 503 F.3d 256, 258 n.1 (3d Cir. 2007) (holding the "failure to raise an argument in one's opening brief waives it").

Accordingly, the Court will not consider Defendants' "corrected memorandum." (Dkt. No. 80; *see* Dkt. No. 78.)

### ii. Plaintiffs' Motion To Strike Defendants' Reply In Support Of Their Cross-Motion For Summary Judgment. (Dkt. No. 87.)

Finally, Plaintiffs move to strike Defendants' reply in support of their purported cross-Motion for Summary Judgment. (*See* Dkt. Nos. 86, 87.) Notably, Defendants did not seek or obtain leave of Court to file their sur-reply. Pursuant to L.Civ.R. 7.1(h), "[n]o reply brief in support of the cross-motion shall be served and filed without leave of the assigned Judge." *See also Westpark Elecs. LLC v. EDealer LLC*, No. 22-4327, 2023 WL 157582, at *2 (D.N.J. Jan. 11, 2023) (granting motion to strike where the defendants, "without first obtaining permission from the Court—filed a reply in further support of their cross-motion . . . ."); *Ass'n of New Jersey Chiropracters v. Aetna, Inc.*, No. 09-3761, 2014 WL 7409919, at *1 n.2 (D.N.J. Dec. 31, 2014).

Accordingly, the Court will not consider Defendants' reply in support of their Cross-Motion for Summary Judgment. (*See* Dkt. Nos. 86, 87.)

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Defendants' Cross-Motion for Summary Judgment and Motions *in*

*Limine* are **DENIED**.  Plaintiffs' Motion *in Limine* is **DENIED as moot**.  Plaintiffs' Motions to Strike are **GRANTED**.  The Court shall enter a Judgment and Order consistent with this Opinion.

Dated: September 15, 2025

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE